UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ELIZABETH KEIMER,

              Petitioner,                CIVIL ACTION NO. 04 CV 71191 DT

        v.                       DISTRICT JUDGE GEORGE CARAM STEEH

JOAN YUKINS,                MAGISTRATE JUDGE VIRGINIA M. MORGAN

              Respondent.

_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

Petitioner Mary Elizabeth Keimer was convicted by a jury in the Genessee County Circuit Court, State of Michigan, of conspiracy to commit first-degree murder, M.C.L. § 750.157a, first-degree premeditated murder, M.C.L. § 750.316(1)(a); felony murder, M.C.L. § 750.316(1)(b), and larceny in a building, M.C.L. § 750.360.  Petitioner was sentenced as a habitual offender, fourth offense, M.C.L. § 769.12, to concurrent terms of life imprisonment on the conspiracy conviction and life without parole for the murder convictions.[1]  The Michigan Court of Appeals affirmed petitioner's convictions and sentences, People v. Keimer, 2003 WL 21186603 (Mich.App.), and the Michigan Supreme Court denied her application for leave to appeal, People v. Keimer, 469 Mich. 950, 671 N.W.2d 49 (Mich. Oct. 31, 2003)(Table No.

---

[1]Petitioner's larceny conviction was vacated at sentencing as a predicate offense to the felony murder conviction.

- 1 -

124008).  Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The

district court referred the matter to this court for Report and Recommendation.  For the reasons

stated below, the court recommends that petitioner's request for a writ of habeas corpus be

denied.

### II.  Background

Petitioner and co-defendant Thomas Flum were convicted of murdering petitioner's

mother, Bonnie May Burdt.  For approximately one year prior to the murder, which occurred on

January 27, 1999, Burdt, petitioner, and petitioner's teenage daughter, Nicole Grenier, lived

together in a house in Mount Morris Township.  Prior to that time, Burdt was living in Kewadin,

Michigan.  Petitioner was a habitual drug user who had been in and out of drug rehabilitation

facilities on several occasions.  Upon the death of her husband, Burdt sold her house in Kewadin

and moved into the Mount Morris Township home in an attempt to help petitioner with her drug

problem.  Petitioner apparently remained drug free through August of 1998.  However, in

September of 1998, petitioner, using Burdt's bank card, began stealing $200 to $500 per day

from Burdt's bank account to purchase drugs.  To conceal her activities, petitioner began

intercepting Burdt's mail and taking her bank statements.

On January 27, 1999, at approximately 7:15 p.m., Grenier came home to find Burdt lying

on her bed, with a plastic bag containing a toxic chemical solution secured around her head,

taped at the neck.  Burdt had ingested the solution and its fumes while the bag was around her

neck, causing extensive internal and external injuries and ultimately resulting in her death.

Several rooms in the house had been ransacked in an apparent attempt to make it look as if the

murder had been committed during the course of a robbery.  Various items were removed from the house and placed in the garage, including a safe containing money that had been in Burdt's possession.

The following day, the police arrested Flum, whom petitioner had met two years earlier while in drug rehabilitation, at a nearby motel.  Flum initially denied any involvement in Burdt's death.  However, he subsequently gave a statement implicating petitioner in the murder.  Flum admitted that he was present during the commission of the murder, but stated that he neither encouraged nor participated in the killing and that he had attempted to intervene.

Like Flum, petitioner initially denied any involvement in the murders, but subsequently confessed her involvement to the police on January 30, 1999:

> In her taped confession, which was played to the jury at trial, Keimer stated she met Flum during drug rehabilitation two years before the murder.  On the day before the murder, Keimer and Flum spoke on the telephone, and Keimer arranged for Flum to come from Detroit to Flint by bus.  On the night of January 26, 1999, Keimer met Flum at a motel in Mount Morris Township, where they smoked crack cocaine and devised their plan.  Keimer acknowledged that they discussed killing Burdt and she knew the outcome of their plan included the murder of her mother.  The motive was to prevent Burdt from finding out about Keimer's thefts from Burdt's bank account.  Keimer stated that she drove Flum to the house and provided him with the toilet cleaner and tape used to kill Burdt.  While Flum was alone in the bedroom with Burdt, Keimer ingested crack cocaine and heroin.  She then proceeded to steal money from Burdt's purse and removed bank statements and a $1,495 disability check from the house.  The defendants also removed certain items from the house and left them in the garage, including a television, VCR, and Nicole's computer.  Keimer then drove Flum back to the motel, where they used drugs.

- 3 -

Keimer, 2003 WL 21186603 at *2.

Following an eight-day jury trial, Flum was convicted of second-degree murder, first-degree felony murder, and larceny in a building.  As noted above, petitioner was convicted of conspiracy to commit first-degree murder, first-degree premeditated murder, felony murder, and larceny in a building.

Petitioner seeks a writ of habeas corpus on the following grounds:

> (1) Petitioner was denied her constitutional right to a fair and impartial jury where the trial court failed to excuse jurors who had been exposed to prejudicial extraneous matters and would otherwise have been dismissed for cause.

> (2) The prosecution failed to present sufficient evidence to sustain a jury verdict of guilty of first-degree felony murder where it failed to establish the predicate felony of larceny in a building and failed to establish the specific intent element of conspiracy and first-degree premeditated murder.

> (3) The trial court erred and denied petitioner a fair trial in admitting hearsay statements by a co-defendant, Flum, exonerating himself and implicating defendant as excited utterances under MRE 803(2), or as statements of a co-conspirator, MRE 801(D)(2)(e), where there was no independent proof of a conspiracy and the statements were not made during the course and in furtherance of the conspiracy.

> (4) Petitioner was denied her right to a fair trial under the Michigan and Federal Constitutions by the intentional prosecutorial misconduct where the prosecutor engaged in improper and highly prejudicial argument to the jury where he appealed to the sympathy of the jurors for the victim and civic duty as a basis to convict, mischaracterized the evidence, and denigrated petitioner and her defense.

(5) The trial court erred reversibly where it misstated the law in instructing the jury on issues central and controlling to the case and read instructions in a confusing manner.

### III.  Standard of Review

A petition for a writ of habeas corpus is the exclusive federal remedy available to a state prisoner who challenges the constitutionality of his confinement.  See 28 U.S.C. § 2254; Prieser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827 (1973).  In order to prevail, the petitioner must demonstrate that she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A petition for habeas corpus relief may not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  A state court decision is contrary to federal law "when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts."  Maldonado v. Wilson, __F.3d __, 2005 WL 1654766 at *4 (6th Cir.)(citing Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495 (2000)).  A state court decision is an unreasonable application of federal law "when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner."  Id.  Where a claim has not been adjudicated on the merits in state court and has not been procedurally defaulted, the

- 5 -

court will apply a *de novo* standard of review.  Hill v. Mitchell, 400 F.3d 308, 313 (2005).  The

state court's findings of fact are "presumed to be correct."  28 U.S.C. § 2254(e)(1).  The

petitioner bears the burden of rebutting the presumption of correctness by clear and convincing

evidence.  Id.

### IV.  Petitioner's Claims

#### (A) Trial Court's Failure to Excuse Certain Jurors

At the start of the third day of trial, it came to the trial court's attention that a juror seated

on petitioner's jury had read portions of a newspaper article about the Burdt murder and the

prosecution of petitioner and Flum.[2]  (TT IV, p. 13)  Upon questioning by the trial court, the

juror stated that he read the first two lines of the article and that he stopped reading it once he

realized that it was about the Burdt murder.  (TT IV, pp. 13-14)  In addition, the juror stated that

he had informed another juror about the article.  (TT IV, pp. 14-15)  The trial court questioned

both jurors as to whether the article would have any effect upon their ability to render a fair

verdict.  Both jurors replied that the article would not affect their judgment in the case.

Petitioner's attorney stated that he wanted both jurors to remain on the jury and expressed the

opinion that the trial court could "handle it all with a cautionary instruction."  (TT IV, pp. 28-30)

The trial court

---

[2]Separate juries were empaneled for petitioner and Flum.

concluded that there was no need to remove either juror.  It then admonished the jurors on both

Flum's jury and petitioner's jury to avoid any news reports about the case.  (TT IV, pp. 32-34)[3]

Petitioner claimed on direct appeal that the trial court abused its discretion by failing to

remove the jurors and that her constitutional right to a fair and impartial jury was thereby

violated.  The Michigan Court of Appeals rejected petitioner's claim, stating the following:

> The record makes clear that this issue was waived by defendant,
> *People v. Carter*, 462 Mich. 206, 216; 612 NW2d 144 (2000), and
> in any event, defendant has failed to meet her burden of
> demonstrating that she was actually prejudiced by the jurors'
> presence or that the jurors should have been excused for cause....
> Defendant's related claim challenging the court's failure to excuse
> another juror who informed the court that he was experiencing
> personal problems while participating in the trial is similarly
> flawed.  Defendant never sought to excuse the juror and there is no
> record that the juror was biased or affected in any way by
> extraneous matters.  Defendant's argument in this regard is
> therefore without merit.

Keimer, 2003 WL 21186603 at *9.

Petitioner contends in her habeas petition, as she did on direct appeal, that the trial court

erred in failing to remove the jurors and that her Sixth Amendment right to be tried by a fair and

impartial jury was thereby violated.  The State contends that the Michigan Court of Appeals'

rested its decision on an independent and adequate state procedural ground and, therefore, that

review of the issue on the merits in this proceeding is barred.  The court notes that petitioner did

---

[3]Later in the trial, another juror indicated to the trial court that he had some unspecified
personal problem and was unsure if he could continue to serve as a juror.  After thorough
questioning by the trial court, the juror indicated that he was willing to continue.  Plaintiff
mentions this incident in her brief, but does not appear to contend that it is grounds for habeas
relief.  To the extent she raises such a claim, it is, as the Michigan Court of Appeals found,
without merit.

not address the issue of procedural default in her petition or brief, and that the state devoted

exactly one sentence to the issue in its brief.  Petitioner, as a *pro se* litigant, cannot be faulted for

failing to discuss this issue.  However, the same cannot be said for the State.  As the Sixth

Circuit has recognized, determining whether a habeas petitioner has procedurally defaulted a

claim involves a complex analysis.  See, e.g., Maupin v. Smith, 785 F.2d 135, 138 (6th Cir.

1986)("When a state argues that a habeas claim is precluded by the petitioner's failure to observe

a state procedural rule, the federal court must go through a complicated analysis").  If, in a

particular case, a claim has clearly been defaulted, then perhaps the state need not engage in an

extended discussion of the matter.  However, as is discussed below, this is not such a case.

Where the state seeks to invoke procedural default and the issue is of some degree of complexity,

it is incumbent upon the state to adequately brief the issue.  Conclusory statements do not assist

the court in fairly determining the issue.

When state court review of a federal claim is barred pursuant to an independent and

adequate state procedural rule, review of the claim in a federal habeas corpus proceeding is

likewise barred unless the petitioner can demonstrate (1) cause for the default and actual

prejudice, or (2) that failure to consider the claim would result in a fundamental miscarriage of

justice.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991).  A four-part test is

used to determine whether a claim is procedurally defaulted:

> First, the court must determine whether there is a state procedural
> rule applicable to the petitioner's claim and whether the petitioner
> failed to comply with the rule.  Second, the court must determine
> whether the state court actually enforced the state procedural rule.
> Third, the court must decide whether the state procedural rule is an

> adequate and independent state ground upon which the state can
> rely to foreclose review of a federal constitutional claim.  Fourth, if
> the preceding questions are answered in the affirmative, the
> petitioner must demonstrate that there was cause for him to neglect
> the procedural rule and that he was actually prejudiced by the
> alleged constitutional error.

Williams v. Bagley, 380 F.3d 932, 966 (6th Cir. 2004)(citations omitted).

The Michigan Court of Appeals determined that petitioner had waived her argument regarding the trial court's failure to remove the jurors.  Though the Court did not expressly state the grounds for the waiver, it is evident from the Court's citation of People v. Carter, 462 Mich. 206, 216, 612 N.W.2d 144 (2000) and the manner in which the issue was resolved in the trial court that the basis for the waiver was that counsel did not ask to have the jurors removed or otherwise object to their continued presence on the jury and agreed that the matter could be handled by giving a cautionary instruction.

In Carter, the defendant was convicted of first-degree murder, armed robbery, and possession of a firearm during the commission of a felony in the shooting death of a convenience store clerk.  During deliberations, the jury sent a note to the trial court indicating that they wished to review certain testimony, pictures, and illustrations.  The trial court indicated that the pictures and illustrations would be provided, but that the jurors would have to rely on their own recollection as to what the witnesses said.  Defense counsel approved of the trial court's response.  The defendant appealed his convictions to the Michigan Court of Appeals, claiming that the trial court violated MCR 6.414(H) by refusing the jury's request to review the testimony. The Court of Appeals agreed that the trial court's response violated the rule.  The Court of

- 9 -

Appeals proceeded to apply a harmless error standard, concluding that the error could not be deemed harmless. Accordingly, the Court of Appeals reversed defendant's convictions and remanded the matter for a new trial. Carter, supra, 462 Mich. at 207-11, 612 N.W.2d 144.

The Michigan Supreme Court reversed the decision of the Court of Appeals, concluding that while the trial court had, in fact, violated the court rule, defendant waived his rights under the rule by virtue of counsel's acquiescence in the trial court's action and that the waiver "extinguished any error." Id., 462 Mich. at 219, 612 N.W.2d 144. In reaching its decision, the Court distinguished between a "forfeiture" resulting from a failure to object to a trial error and "waiver" of an error by approval or acquiescence of the trial court's action. The Court indicated that a forfeited error would still be subject to plain error analysis on review, while an error that had been waived would be "extinguished" so as to preclude even plain error review. Id., 462 Mich. at 214-19, 612 N.W.2d 144.

In the matter presently before the court, the Michigan Court of Appeals relied upon the procedural rule established in Carter in determining that petitioner had waived her juror removal claim. The fact that the Court of Appeals went on to conclude that petitioner suffered no prejudice as a result of the trial court's failure to remove the jurors does not compel the conclusion that the Court did not rely on the procedural rule in denying petitioner's claims. See, e.g., Simpson v. Jones, 238 F.3d 399, 408-09 (6th Cir. 2000)("An alternative holding in which a state procedural bar is a sufficient basis for the state court's judgment is adequate to preclude a claim from being raised on habeas review..."); see also McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir. 1991); Atkins v. Phillips, 238 F.3d 419 (Table), 2000 WL 1720719 (6th

- 10 -

Cir.(Mich.))("A state court does not fail to rely upon a procedural default by ruling on the merits in the alternative").  Accordingly, the first two prongs of the procedural default analysis are met.

The third prong of the test requires the court to determine whether the state procedural rule is an "adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim."  Williams, 380 F.3d at 966.  "Whether the application of a state procedural rule constitutes an 'adequate' ground for disposing of a constitutional claim depends, in part, on the timeliness of the state's implementation of the procedural rule."  Luberda v. Trippett, 211 F.3d 1004, 1006 (6th Cir. 2000).  As the Supreme Court stated in Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850 (1991)(citations omitted), "only a 'firmly established and regularly followed state practice' may be interposed by a state" to bar subsequent federal review of a claim in a habeas corpus proceeding.  To determine whether the rule is firmly established, the court must consider whether, at the time of the conduct that gave rise to the default, the petitioner could be "deemed to have been apprised of [the rule's] existence."  Ford, 498 U.S. at 424, 111 S.Ct. 850; see also Hutchinson v. Bell, 303 F.3d 720, 727 (6th Cir. 2002).  Because the conduct that gave rise to the default in this matter occurred at trial, the question is whether petitioner could be deemed to have been apprised of the Carter waiver rule at the time of her trial.  For the reasons discussed below, the court finds that the waiver rule relied on by the Court of Appeals was not firmly established at the time of petitioner's trial and, therefore, that it does not constitute an independent and adequate state ground barring habeas review of petitioner's juror removal claim.

- 11 -

The Carter decision was handed down on June 27, 2000, nearly one month after petitioner was convicted. The court has not found a single case that predates petitioner's conviction in which a Michigan court determined, as the Michigan Supreme Court found in Carter, that an affirmative waiver of a trial error resulted in an extinguishment of the error such that even plain error review was precluded. In Carter, the Michigan Supreme Court cited two cases in which the Court of Appeals rejected claims of error where defense counsel acquiesced in the actions of the trial court. See People v. Fetterly, 229 Mich.App. 511, 518-19, 583 N.W.2d 199 (1998); People v. Crawford, 232 Mich.App. 608, 620, 591 N.W.2d 669 (1998). However, in neither case did the Court of Appeals expressly find that the error had been extinguished by counsel's acquiescence. In Crawford, the Court of Appeals reviewed the claim on the merits notwithstanding counsel's acquiescence, concluding that the trial court's refusal of the jury's request for a trial transcript did not constitute an abuse of discretion in light of the fact that both the prosecutor and defense counsel agreed with the trial court's decision. Id. at 620, 591 N.W.2d 669. Though the Court of Appeals did not expressly apply a waiver rule in Fetterly, it is at least arguable that a *de facto* waiver rule was applied. Nonetheless, one prior case in which a Carter-type waiver rule was applied is clearly insufficient to demonstrate that the rule was firmly established and regularly followed. Based on the foregoing, the court finds that the waiver rule applied to petitioner's juror removal claim was not firmly established as of the time of her trial and, therefore, that the claim is not procedurally defaulted.

As noted above, where a claim raised in a habeas petition was adjudicated on the merits in state court, the court must review the claim under the deferential standard of review set forth in § 2254(d). A *de novo* standard of review will be applied where the claim was not adjudicated

on the merits and was not procedurally defaulted.  Hill v. Mitchell, 400 F.3d 308, 313 (2005).  It is debatable whether the Michigan Court of Appeal's cursory discussion of petitioner's juror removal claim constitutes an adjudication on the merits for the purposes of § 2254(d).  However, the court need not determine which standard of review to apply, because, as discussed below, plaintiff is not entitled to habeas relief on her juror removal claim even if a *de novo* standard is applied.

"The mere exposure to publicity is not sufficient, standing alone, to give rise to a presumption that the defendant will be deprived of his right to be tried by fair and impartial jurors."  Goins v. McKeen, 605 F.2d 947, 952 (6th Cir. 1979).  A petitioner who claims that he was denied his right to a fair and impartial jury by virtue of a juror's exposure to a news article regarding the case must "sustain that claim not as a matter of speculation but as a demonstrable reality."  Id. at 951 (citations and quotations omitted).  Further, the trial judge is given wide discretion in ruling on the issue of prejudice resulting from a juror's exposure to a news article regarding the trial.  Id. at 952 (quoting Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 1173 (1959)).

Here plaintiff has failed to demonstrate that the jurors' exposure to the newspaper article resulted in any prejudice to her.  The juror who read the article indicated that he read only two lines and that he stopped reading it after that.  There is nothing in the record to indicate that the juror learned of any prejudicial facts or was exposed to inadmissible evidence as a result of his reading of the article, and there is no indication that the article affected the juror's ability to fairly hear the evidence and render a verdict in the case.  Similarly, there is nothing in the record indicating that the juror who heard about the article from the first juror was exposed to any

- 13 -

prejudicial or inadmissible information or that his encounter with the first juror affected his

ability to fairly examine the evidence and render a verdict.  The second juror indicated that he

might have learned from the first juror when the murder occurred, but that he otherwise obtained

no other extraneous information about the case.  There is nothing prejudicial about when the

murder occurred and, in any event, that information was presented at trial prior to the time of the

jurors' exposure to the newspaper article.  Further, the trial court, outside of the presence of the

other jurors, carefully questioned each juror about what he learned and whether anything he

learned would affect his ability to reach a fair verdict.  Both jurors firmly stated that the article

would have no effect upon them.  The trial court, counsel for both defendants, and the prosecutor

all agreed that there was no need to remove the jurors and that the matter could sufficiently be

handled by a cautionary instruction, which the trial court gave.  In light of these circumstances,

the court finds that the jurors' exposure to the article did not result in a violation of petitioner's

right to be tried by a fair and impartial jury.

### B.  Sufficiency of Evidence

Petitioner next contends that evidence is insufficient to sustain her murder and conspiracy

convictions.  Petitioner presented this argument to the Michigan Court of Appeals, which found

it to be without merit:

> Next defendant Keimer alleges that the evidence produced at trial
> was insufficient to sustain her jury convictions of conspiracy to
> commit first-degree murder, felony murder, and first-degree
> premeditated murder.  We disagree.
>
> In reviewing a sufficiency of the evidence claim, this Court must
> consider the evidence presented in the light most favorable to the
> prosecution and determine whether a rational trier of fact could
> find that the prosecution proved the essential elements of the
> crimes charged beyond a reasonable doubt. The reviewing court

- 14 -

must draw all reasonable inferences and make credibility choices in support of the jury verdict. Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime.

Defendant argues that the prosecution failed to present sufficient evidence that defendant committed felony murder because the predicate felony, larceny in a building, was never proved, and if there was a larceny, it occurred as an afterthought, subsequent to the victim's death. [D]efendant [also] asserts that the felony murder doctrine will not apply if the intent to steal property of the victim was not formed until after the homicide. Defendant argues that she did not form the intent to steal from Burdt until after the homicide.

The elements of felony murder and the underlying felony, larceny in a building, are set forth in the discussion of codefendant Flum's sufficiency of the evidence claim, see text, *supra*. The murder need not have been contemporaneous with the commission of the enumerated felony, so long as the defendant intended to commit the underlying felony at the time of the killing.

In the instant case, the prosecution produced sufficient evidence to allow a rational jury to find guilt beyond a reasonable doubt regarding the charge of felony murder. The evidence admitted at trial established that defendant drove codefendant Flum to the victim's house. She entered the home and distracted Burdt until Flum invaded the living area of the residence through the garage door. Thus, at a minimum, evidence was introduced showing that defendant aided and abetted in the murder by supplying materials used to kill Burdt. There was evidence that the house was ransacked by someone who cared about its contents during the course of the murder or soon thereafter. Defendant admitted in her confession that she took money from Burdt's purse, allowing the jury to reasonably infer that some, if not all, of this money belonged to Burdt. The police observed a safe that had been broken open in the garage, which one could infer from Nicole Grenier's testimony contained cash being kept by Burdt. Moreover, defendant knew that Flum had gone through the house and taken several objects that he had placed in a black bag that he took with him from the residence. Finally, defendant drove the getaway car, drove Flum back to the motel, and then used the money to buy drugs for herself and defendant. In sum, ample evidence was presented from which the jury could have concluded

- 15 -

that defendant intended to steal Burdt's money either before or at
the time of the murder.  Defendant's argument in this regard is
therefore without merit.

Defendant further argues that she could not have formed the
specific intent to steal due to voluntary drug intoxication.
Although first-degree felony murder is a general intent crime for
which the defense of intoxication may not be asserted, the underlying felony here, larceny, is a sp
be asserted.  However, a defense of intoxication is proper only if the facts of the case would
allow the jury to conclude that the defendant's intoxication was so great that the defendant was
unable to form the necessary intent.  The defendant's intent can be inferred from the her words
and conduct, as well as from facts and circumstances established beyond a reasonable doubt.

In this case, viewing the evidence in the light most favorable to the
prosecution, a reasonable jury could have concluded that defendant
formed the intent to steal Burdt's money either before or at the
time of the killing...and that defendant was not intoxicated to the
point at which she was incapable of forming the intent to commit
the charged crime.  According to defendant's own confession, she
and Flum planned Burdt's murder and discussed the underlying
motive – obtaining the victim's money – for two days before the
murder actually happened.  The prosecution presented evidence
that defendant conceived a plan to murder her mother, Burdt, with
a motive to prevent Burdt from discovering defendant's ongoing
theft of Burdt's money, to secure her inheritance and regain control
of her money which she had voluntarily given to Burdt, and to
steal yet more money for the immediate need to buy more drugs.
She contacted codefendant Flum, convinced him to travel to Flint,
presented him with the criminal objective of killing her mother,
provided the motive, drove him to and from the crime scene,
assisted him in the killing, and stole money from the residence.  As
defendant acknowledges in her brief on appeal, whether and when
defendant formed the requisite intent was a question for the jury to
decide.  The jury obviously found defendant had the capacity to
form and indeed possessed the requisite intent when it found her
guilty of felony murder and larceny in a building.  Viewed in the
light most favorable to the prosecution, ample evidence supports
these convictions.

In a related argument, defendant also argues that there was
insufficient evidence to sustain her convictions for conspiracy to
commit murder and first-degree premeditated murder because she
was so overcome by the ingestion of drugs that she was devoid of

- 16 -

the ability to formulate the requisite specific intent to be convicted of those offenses.

The offense of first-degree premeditated murder is a specific intent crime and requires the prosecution to prove beyond a reasonable doubt that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. To deliberate is to measure and evaluate the major facets of a choice or problem; to premeditate is to think about beforehand. The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. The prosecutor may use the following four factors to prove premeditation: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide.

Criminal conspiracy is a specific intent crime which arises from a mutual agreement between two or more parties to do or accomplish a crime or unlawful act. To prove a conspiracy to commit murder, it must be established that each of the conspirators have the intent required for murder and, to establish that intent, there must be foreknowledge of that intent. The crime of conspiracy punishes the planning of the substantive offense; not the actual commission of the crime.

Voluntary intoxication may be a defense to first-degree murder if the intoxication prevents the defendant from premeditating and deliberating.

Here, as previously noted, the prosecution presented abundant evidence, including defendant's own confession, that she conceived a plan to murder her mother, Burdt, with a motive to prevent Burdt from discovering defendant's on-going theft of Burdt's money and regain control of her money which she had voluntarily given to Burdt.

As defendant acknowledges, the issue of defendant's intent and whether defendant's intoxication rendered her incapable of forming the requisite intent is for the jury. The jury was free to infer defendant's specific intent, or her knowledge of Flum's specific intent, from the circumstantial evidence. The jury was properly instructed on specific intent and defendant's intoxication defense, and obviously found, in rendering its verdict, that she possessed the requisite intent to commit conspiracy to commit

- 17 -

> first-degree premeditated murder. Viewed in the light most
> favorable to the prosecution, the evidence supports defendant's
> convictions.

Keimer, 2003 WL 21186603 at *9-13 (citations and quotations omitted).

Because the Court of Appeals adjudicated petitioner's sufficiency of the evidence claim

on the merits, the court is bound by the deferential standard of § 2254(d).  Accordingly, the

court's review of petitioner's claim is limited to a determination of whether the Court of

Appeals' decision was contrary to, or involved an unreasonable application of, firmly established

law, as determined by the Supreme Court, or was based upon an unreasonable determination of

the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. §

2254(d)(1), (2).  Claims regarding the sufficiency of the evidence to support a conviction are

governed by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979).  Under Jackson, a

reviewing court must determine "whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  Id., 443 U.S. at 319, 99 S.Ct. 2781.

Petitioner does not contend that the Michigan Court of Appeals' adjudication of her

sufficiency of the evidence claim was contrary to, or involved an unreasonable application of,

Jackson, or that its decision was based upon an unreasonable determination of the facts.  She

merely rehashes the arguments she raised in her direct appeal as to why the evidence was

insufficient to sustain her conviction.  The Court of Appeals applied the proper legal standard,

thoroughly discussed the evidence in the case, and determined that there was more than enough

evidence in the record to sustain defendant's convictions.  Given the deferential standard of

review inherent in <u>Jackson</u> and the deferential standard by which the court is bound under §

2254, the court finds no basis in the record for disturbing the decision of the Court of Appeals.

### C.  Erroneous Admission of Hearsay Statements

After Burdt's body was discovered, Officers James Gagliardi and Louis Tyson of the

Mount Morris Township police department and other officers were dispatched to a nearby Super

8 Motel to make contact with Phillip Barnes, who had been identified as a suspect in Burdt's

murder.  (TT III, pp. 86-89)  Gagliardi and Tyson made contact with Barnes, who agreed to

accompany the officers to the station house for questioning.  <u>Id</u>.  After transporting Barnes to the

station, Gagliardi, Tyson, and other officers went back out the Super 8 Motel to pick up Flum,

who had also been identified as a suspect in Burdt's murder.  Gagliardi and Tyson arrested Flum

in his room and then placed him in their patrol unit.  (TT III, pp. 89-94)  During the ride to the

station house, Flum made certain spontaneous statements to the officers.  According to the

testimony of Gagliardi, Flum stated that he "had nothing to do with what had taken place that

day," that he "didn't know anything about it," that "it was [petitioner's] plan," and that

"[petitioner] had been talking about that if her mother was out of the way, that she stood to

inherit roughly forty to $60,000 in cash."  (TT III, pp. 95-101)  Over the objections of

petitioner's attorney, the trial court admitted the statements as both excited utterances under

Mich. R. Evid. (MRE) 803(2) and coconspirator statements under MRE 801(d)(2)(E).  (TT III,

pp. 95-101, 115-120, 199-200)

On appeal, petitioner claimed that the trial court abused its discretion in admitting Flum's

statements and that the trial court thereby violated her right to a fair trial and her right of

confrontation.  The Michigan Court of Appeals agreed that the statements were admitted in error,

but concluded that the error was harmless:[4]

> [I]n light of the fact that defendant's constitutional right to
> confrontation is involved, any error must be examined to
> determine whether it is harmless beyond a reasonable doubt.  A
> preserved, nonstructural constitutional error is harmless if it is
> clear beyond a reasonable doubt that a rational jury would have
> found the defendant guilty absent the error.  This Court should
> consider the importance of the witness' testimony, whether the
> testimony was cumulative, the presence or absence of evidence
> corroborating or contradicting the testimony of the witness, the
> extent of cross-examination otherwise permitted, and the overall
> strength of the prosecution's case.
>
> In this case, Flum's statements were entirely cumulative of the
> evidence presented by defendant herself in her confession, wherein
> she confessed her part in the conspiracy and murder.  Moreover, as
> the prosecution argues, there was no harm in defendant's inability
> to cross-examine Flum regarding these statements. The first two
> statements were actually rebutted by the prosecution's theory –
> that Flum was involved in the murder and that it was not all
> defendant's plan.  Furthermore, the final statement that
> codefendants had discussed the motive for the crime was directly
> corroborated and cumulative of defendant's own statement.  It was
> irrelevant who devised the plan and the motive, as defendant
> acknowledged sharing both with Flum.  Finally, in light of the
> overwhelming evidence of defendant's guilt, the error in the
> admission of Flum's statements was harmless beyond a reasonable
> doubt.

Keimer, 2003 WL at **14-15 (citations omitted).

---

[4]The Court of Appeals determined that the statements "do not qualify as admissible statements of a coconspirator under MRE 801(d)(2)(E) because they were not made during and in furtherance of alleged conspiracy."  Keimer, 2003 WL 21186602 at *13.  The Court of Appeals further concluded that "the trial court clearly erred in finding that Flum's statements were made while under the prolonged excitement caused by the murder," and, therefore, that the statements were not admissible under the excited utterance exception to the hearsay rule, MRE 803(2).  Id. at **13-14.

In her brief, petitioner devotes the bulk of her discussion to arguing that Flum's statements, as testified to by Officer Gagliardi, were inadmissible under the Michigan Rules of Evidence. She offers only conclusory statements as to the prejudicial effect of the admission of the statements. The question of admissibility is of no import in this proceeding. The Michigan Court of Appeals determined that the statements were inadmissible, and it would fall outside of the court's scope of review to revisit that decision. Rather, the sole question before the court is whether the erroneous admission of Flum's statements "had a substantial and injurious effect or influence in determining the jury's verdict and resulted in actual prejudice." Barker v. Yukins, 199 F.3d 867, 873 (6th Cir. 1999).[5]

Two of the statements Flum made to Officer Gagliardi – that he "had nothing to do with what had taken place that day" and that he "didn't know anything about it" – did not implicate petitioner. The admission of these statements thus resulted in no prejudice to her. The admission of other two statements was at least arguably prejudicial because Flum indicated in those statements that petitioner had expressed a motive for killing her mother and that she alone had hatched the plan to murder Burdt. However, as the Court of Appeals noted, petitioner, in a

---

[5]In Barker, 199 F.3d at 872, n.4, the Sixth Circuit stated the following regarding habeas review of a state court's harmless error determination:

> To reiterate, § 2254(d) allows a habeas court to review a state court's adjudication only where an unreasonable application of federal law has occurred. The primary authority on the harmless error standard remains *Chapman v. California*, 386 U.S. 18, 23-24, 87 S.Ct. 824, 827-28 (1967), where the Supreme Court held that constitutional errors may be treated as harmless unless a court can conclude, beyond a reasonable doubt, that the evidence complained of might have contributed to the defendant's conviction. Accordingly, a habeas court reviewing a state court's determination of harmless error must conclude that Chapman, the federal jurisprudence on harmless error, was misapplied in order to issue a writ under § 2254(d).

taped confession played to the jury, fully admitted her involvement in the planning and execution of the murder. Thus, Flum's statements were largely cumulative of petitioner's admissions. Further, the Court of Appeals characterized the evidence against petitioner as "overwhelming," a characterization with which the court would tend to agree. Keimer, 2003 WL at **15.[6] Given the weight of the evidence of petitioner's guilt, the court cannot say that the admission of Flum's limited statements had a substantial and injurious effect on the jury's verdict or that it resulted in actual prejudice to petitioner. Accordingly, the court finds that the trial court's error in admitting those statements does not warrant habeas relief.

### D.  Prosecutorial Misconduct

Petitioner next contends that the prosecutor committed misconduct during his closing argument. She claims that the following statements by the prosecutor constitute misconduct and that they so prejudiced her as to deprive her of her right to a fair trial: (1) the prosecutor improperly appealed to the emotions of the jury (TT VIII, pp. 46-48); (2) the prosecutor called petitioner a liar in his closing argument (TT VIII, pp. 50, 54-55, 65-66); (3) the prosecutor stated that "there is only one verdict in this case supported by the evidence, required by the law and demanded by justice: Guilty..." (TT VIII, p. 66); (4) the prosecutor stated that defense counsel "offers you the easy way out" by the fact that "she admits second degree."... "Don't be lured into doing what is easy as opposed to what is right." (TT VIII, p. 87); and (5) the prosecutor misrepresented the evidence when he argued that a certain $1,400 check belonged to Burdt when, in fact, it was petitioner's disability check (TT VIII, pp. 88-89).

---

[6]Petitioner contends that the evidence far from overwhelming. However, the court would note that not only did the Michigan Court of Appeals find the evidence to be overwhelming, the jury apparently did as well. The transcript shows that the jury reached its verdict in less than one hour. (TT VIII, pp.147-56)

Petitioner raised this argument in her direct appeal.  The Michigan Court of Appeals concluded, without discussion, that petitioner's claim was "without merit."  Keimer, 2003 WL 21186603 at *15.  Where a state court adjudicates a constitutional claim, but fails to articulate its reasoning, the habeas court must apply an "intermediate" standard of review.  Howard v. Bouchard, 405 F.3d 459, 467-68 (6th Cir. 2005).  The court must "conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Id. at 467.  This "independent review" is not a "full, de novo review of the claims."  Id.  Rather, the review "remains deferential, because the court cannot grant relief unless the state court's result contradicts the strictures of AEDPA."  Id. at 467-68.

"On habeas review, claims of prosecutorial misconduct are reviewed deferentially." Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)(citing Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986)).  Habeas relief is warranted only if the prosecutor's statements "were so flagrant as to render the entire trial fundamentally unfair."  Id.  If the court determines that a statement was improper, four factors must be examined in determining whether the misconduct rendered the trial fundamentally unfair: "(1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial."  Id. at 512-13.

With the possible exception of the statement regarding the $1,400 check, each of the challenged statements was well within the bounds of reasonable argumentation based upon the

- 23 -

evidence presented at trial or in rebuttal to points made by defense counsel in his closing.  With regard to the prosecutor's statement that petitioner was a "liar," the evidence established that petitioner gave a number of conflicting statements to the police, ranging from a denial of any involvement in the murder of her mother to a full confession.  The prosecutor was referring to these conflicting statements when he referred to petitioner as a liar, and he was well within the bounds of proper argumentation in pointing these discrepancies out to the jury.  As to the $1,400 check, the evidence was not so clear-cut as to support the prosecutor's statement that petitioner stole it from Burdt.  However, even if the prosecutor misstated or misrepresented the evidence in this regard, it cannot be said that this comment, standing alone, so infected petitioner's trial with prejudice as to render the trial fundamentally unfair.  None of the other comments on which petitioner relies was improper.  In sum, petitioner has failed to demonstrate that the Michigan Court of Appeals' adjudication of her prosecutorial misconduct was contrary to, or involved an unreasonable application of, federal law or that it was based upon an unreasonable determination of the facts.

### E.  Jury Instruction Error

Finally, petitioner contends that the trial court made several jury instruction errors.  First, she claims that the trial court erred in instructing that jury that voluntary intoxication was not a defense to felony murder.  Petitioner concedes that felony murder is a general intent crime and that voluntary intoxication is not a defense to a general intent crime.  See, e.g., People v. Brewer, 101 Mich.App. 194, 195, 300 N.W.2d 491 (Mich.App. 1980).  However, petitioner argues that the predicate felony, larceny in a building, is a specific intent crime for which voluntary intoxication is a defense, see, e.g., People v. Langworthy, 416 Mich. 630, 331 N.W.2d 171 Mich.

- 24 -

1982), and, therefore that the jury should have specifically been instructed that voluntary intoxication was a defense to the felony murder charge brought against her. Petitioner next argues that the trial court erred in failing to instruct the jury that voluntary intoxication is a defense to an aiding and abetting charge. Further, petitioner contends that the trial court erred in failing to *sua sponte* instruct the jury that second-degree murder is a lesser-included offense of felony murder.

Petitioner presented these claims to the Michigan Court of Appeals. As with her prosecutorial misconduct claim, the Court of Appeals summarily rejected plaintiff's jury instruction claims, finding them to be "without merit." Keimer, 2003 WL 21186603 at *15. Because the Court of Appeals adjudicated petitioner's jury instruction claims, but provided no explanation of its decision, the proper standard of review is the "intermediate" standard, as discussed above.

"To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." Scott v. Mitchell, 209 F.2d 854, 882 (6th Cir. 2000). Petitioner has failed to show that the instructions were erroneous as a matter of state law, let alone establish that the trial court committed jury instruction errors of such magnitude as to render her trial fundamentally unfair. The trial court gave instructions regarding the elements of each of the charged offenses, as well as the lesser offense of second degree murder, the defense of voluntary intoxication, and the offenses for which such a defense could be raised. Read as a whole, the instructions fairly conveyed the applicable law to the jury and contained no material omissions. Accordingly, the court finds petitioner's jury instruction claim to be lacking in merit.

## IV.  Conclusion

For the reasons stated above, the court recommends that petitioner's application for a writ of habeas corpus be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

    s/Virginia M. Morgan
VIRGINIA M. MORGAN
Dated:   August 5, 2005          UNITED STATES MAGISTRATE JUDGE

- 26 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARY ELIZABETH KEIMER,

          Petitioner,                CIVIL ACTION NO. 04 CV 71191 DT

        v.                      DISTRICT JUDGE GEORGE CARAM STEEH

JOAN YUKINS,                MAGISTRATE JUDGE VIRGINIA M. MORGAN

          Respondent.

_____/

## REPORT AND RECOMMENDATION

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on Mary E. Keimer and the attorneys of record  by electronic means or U.S. Mail on August 5, 2005.

                s/J Hernandez
                Case Manager to
                Magistrate Judge Morgan

---